UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA BOX, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. EDCV 08-1257-JEM <br><br> MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF COMMISSIONER |

**PROCEEDINGS**

On October 2, 2008, Cynthia Box ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") benefits. The Commissioner filed an Answer on February 11, 2009. On August 28, 2009, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be affirmed.

**BACKGROUND**

On February 7, 2000, Plaintiff filed an application for SSI benefits. (Administrative Record ("AR") at 393.) In May 2000, Plaintiff was deemed disabled since February 1, 2000 due to mental impairments that met Listing level criteria. (Id.) Specifically, Plaintiff had the medically determinable mental impairments of schizophrenic, paranoid, or other psychotic disorder, which met the requirements of Listing 12.03 A and B. (AR 395.)

In a continuing disability review in 2004, Claimant was determined to have experienced medical improvement and her benefits were terminated on October 1, 2004. (AR 393.) Claimant timely requested a hearing which was held before Administrative Law Judge ("ALJ") F. Keith Varni on June 14, 2005. (AR 13.) Plaintiff appeared and testified at the hearing but was not represented by counsel. (Id.) Her representative payee Ruben Gonzalez also testified, as did vocational expert Sandra Moore Fioretti. (Id.) The ALJ issued a decision on November 28, 2005, upholding the cessation of benefits based on medical improvement. (AR 13-27.) On May 6, 2006, the Appeals Council denied review of the ALJ's decision. (JS 2.)

Plaintiff filed this action with the District Court. On September 24, 2007, the District Court vacated and remanded the ALJ's decision for further proceedings. (AR 422-41.) The Court based its remand on the ALJ's failure to develop the record fully and fairly. (AR 438-39.) There was no ruling on the merits of any substantive issue. Pursuant to the remand order, the Appeals Council directed the ALJ to offer Claimant the opportunity for a hearing and take further action to develop the record. (AR 420.)

Subsequently, Claimant appeared and testified at a hearing on June 13, 2008, before the ALJ. (AR 393.) Claimant was represented by counsel. (Id.) Vocational expert Joseph M. Mooney also testified. (Id.) The ALJ issued an unfavorable decision on July 11, 2008. (AR 393-407.)

///

///

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues that Plaintiff is raising as grounds for reversal and remand are as follows:

1. Whether the ALJ appropriately complied with the remand order to develop the record fully and fairly.

2. Whether the ALJ properly considered the type, dosage, effectiveness, and side effects of Plaintiff's medications.

3. Whether the ALJ properly considered the treating psychiatrist's opinion.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "'more than a mere scintilla' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotations and citations omitted). This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

**DISCUSSION**

The ALJ's determination that Plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence and free of legal error.

**A.     The Legal Standards Regarding Medical Improvement**

An individual is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months.  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "Once a claimant has been found to be disabled, . . . a presumption of continuing disability arises in her favor[, and the Commissioner] bears the burden of producing evidence sufficient to rebut this presumption of continuing disability."  Bellamy v. Sec'y of Health & Human Serv., 755 F.2d 1380, 1381 (9th Cir. 1985); see also Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983) (disability benefits cannot be terminated without evidence of improvement which is reviewed under the substantial evidence standard).

A recipient whose condition has improved medically so that she is able to engage in substantial gainful activity is no longer disabled.  42 U.S.C. § 1382c(a)(4); 20 C.F.R § 416.994; Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1459 (9th Cir. 1995).  A medical improvement is:

> [A]ny decrease in the medical severity of [a recipient's] impairment(s) which was present at the time of the most recent favorable medical decision that [the recipient was] disabled or continued to be disabled.  A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the recipient's] impairment(s) . . . .

20 C.F.R § 416.994(b)(1)(I), (2)(I).

The ALJ applied and followed the seven-step evaluation process set forth in 20 CFR § 416.994 to determine if a claimant continues to be disabled.

At step one, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 416.920(d), 416.925, and 416.926). If the claimant does, her disability continues (20 CFR § 416.994(b)(5)(I)).

At step two, the ALJ must determine whether medical improvement has occurred (20 CFR § 416.994(b)(5)(ii)). Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs, and/or laboratory findings (20 CFR § 416.994(b)(1)(I)). If medical improvement has occurred, the analysis proceeds to the third step. If not, the analysis proceeds to the fourth step.

At step three, the ALJ must determine whether medical improvement is related to the ability to work (20 CFR § 416.994(b)(5)(iii)). Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities (20 CFR § 416.994(b)(1)(iii)). If it does, the analysis proceeds to the fifth step.

At step four, the ALJ must determine if an exception to medical improvements applies (20 CFR § 416.994(b)(5)(iv)). There are two groups of exceptions (20 CFR § 416.994(b)(3) and (b)(4)). If one of the first group exceptions applies, the analysis proceeds to the next step. If one of the second group exceptions applies, the claimant's disability ends. If none apply the claimant's disability continues.

At step five, the ALJ must determine whether all the claimant's current impairments in combination are severe (20 CFR § 416.994(b)(5)(v)). If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled. If they do, the analysis proceeds to step six.

At step six, the ALJ must assess the claimant's residual functional capacity based on the current impairments and determine if she can perform past relevant work (20 CFR § 416.994(b)(5)(vi)). If the claimant has the capacity to perform past relevant work, her disability has ended. If not, the analysis proceeds to step seven.

At step seven, the ALJ must determine whether other work exists that the claimant can perform, given her residual functional capacity and considering her age, education, and past work experience (20 CFR § 416.994(b)(5)(vii)). If the claimant can perform other work, she is no longer disabled. If the claimant cannot perform other work, her disability continues. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given her residual functional capacity, age, education, and work experience.

In this case, the ALJ determined that: (1) Plaintiff does not have an impairment that equals a listing since October 1, 2004; (2) medical improvement had occurred as of October 1, 2004; (3) the medical improvement is related to work; (4) Plaintiff has severe mental and physical impairments; (5) but the claimant has the residual capacity to do medium work or could perform a significant number of jobs in the national economy. (AR 395, 404, 405, 406.) As a result, the ALJ concluded that Claimant's disability ended on October 1, 2004, and she has not become disabled again since that date. (AR 406.)

**B.  The ALJ Met His Duty to Develop the Record**

Plaintiff's first contention is that the ALJ did not comply with the District Court remand order to obtain the treating notes of Dr. Villar, a treating psychiatrist. Dr. Villar, however, had retired and his records were destroyed. (JS 5-6.) Nonetheless, Plaintiff contends that the ALJ should have issued a subpoena for his records or issued interrogatories to obtain his testimony. (JS 4-5, 6-7.)

The ALJ has a duty to develop the record fully and fairly and to assure that a claimant's interests are considered. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). The ALJ's duty to develop the record fully exists even where the claimant is represented by counsel and heightened when the claimant may be mentally ill. Id.; Tonapetyan, 242 F.3d at 1150. This duty, however, is

1  triggered only when the evidence is ambiguous or there is not sufficient evidence to allow an
2  ALJ to reach a decision. Tonapetyan, 242 F.3d at 1150.
3        The District Court's order was broader than Plaintiff's characterization of it. The
4  Order stated that the ALJ "should have more diligently pursued the records from Plaintiff's
5  treating physicians: Dr. Villar, <u>and the physician that treated Plaintiff after Dr. Villar's</u>
6  <u>retirement</u>." (AR 440) (emphasis added). The order also expressed concern that Plaintiff
7  was not represented by counsel. (AR 439.)
8        Plaintiff saw Dr. Diamreyan and went to Arrowhead Regional Medical Center
9  ("Arrowhead") and San Bernardino County Department of Mental Health ("County") after
10 she stopped seeing Dr. Villar in 2005. (AR 396, 401.) The medical records for Plaintiff's
11 visits to these physicians and facilities were obtained and are part of the record. (JS 5.)
12       Dr. Villar, however, did not respond to the ALJ's request for records because he had
13 retired. (JS 5-6.) The U.S. Attorney's office nonetheless contacted Dr. Villar who provided
14 an affidavit stating that any records had been destroyed. (Id.) There obviously was no
15 reason or need to issue a subpoena for non-existent records.
16       The medical records from Dr. Diamreyan, Arrowhead and County, moreover,
17 reference Claimant's earlier treatment and provide a more contemporary indication of her
18 condition. The medical opinions of these subsequent physicians do not differ in substance
19 from Dr. Villar. This and other medical evidence in the record was sufficient for the ALJ to
20 make his decision on substantial evidence. There was no ambiguity or lack of evidence in
21 the record that triggered the ALJ duty to develop the record further.
22       Nothing prevented Plaintiff's counsel from contacting Dr. Villar as the United States
23 Attorney did, and there is no indication that Dr. Villar had any independent recollection or
24 assertion of what his testimony would be. Any testimony would have been seriously
25 hampered without medical records. Assuming Dr. Villar had any recollection of his
26 treatment of Claimant, there would have been no medical records to support his testimony
27 and no way to determine if the testimony was supported by his treating notes.
28

1  The ALJ substantially complied with the District Court remand order.

2  **C.   The ALJ Properly Considered Medication Side Effects**

3  Plaintiff's second argument is that the ALJ erred by failing to consider the type, dosage, effectiveness, and side effects of Plaintiff's medications. (JS 7-9.) Specifically, Plaintiff cites an undated disability report in which she reports taking Trazadone, which makes her sleepy, and Colotopin, which can be immobilizing (AR 101.) She also cites another disability report dated March 23, 2005. Plaintiff reported taking Soma, which causes leg cramps, and Combivent, which causes drowsiness (AR 177.) The record is otherwise devoid of any reference to medication side effects.

Plaintiff, however, offers a list of other medications taken at various times and then cites to a medical treatise to indicate the possible side effects that could occur from these medications. There is no record evidence that Plaintiff actually suffered any of the possible side effects from these other medications.

Ninth Circuit and District Court case law on an ALJ's duty to consider medication side effects goes down two paths. First, an ALJ must consider all factors that might have a significant impact on an individual's ability to work, including side effects of medications. Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993) (citing Varney v. Secretary of HHS, 846 F.2d 581, 585 (9th Cir. 1987) (superseded by statute on other grounds). Under Varney, an ALJ may not reject a claimant's testimony as to subjective limitations of side effects without making specific findings similar to those required for excess pain testimony. Varney, 846 F.2d at 585. Varney is a case in which the claimant testified that her medications caused fairly severe side effects. Id.

A second line of cases has distinguished Varney. In Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001), the Ninth Circuit found no error in a question to a vocational expert that did not include information about side effects because: "There were passing mentions of the side effects of Mr. Osenbrock's medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with Osenbrock's ability

to work." Id. In Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005), the Ninth Circuit ruled that the failure to address expressly medication side effects is not error where there was no record support for side effects. In Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985), the Ninth Circuit held that the claimant in that case had the burden of producing evidence that his use of prescription narcotics impaired his ability to work.

Building on these Ninth Circuit authorities, numerous Central District of California decisions have distinguished Varney. Met with the same argument presented here that the ALJ failed to consider medication side effects, the District Court in Maguire v. Astrue, 2008 WL 4793668 at *2 (C.D. Cal. 2008), held that there was no error because neither the plaintiff nor anyone else testified that side effects interfered with his ability to work and there was no indication in the medical records that side effects interfered with his ability to work. In Armenta v. Astrue, 2009 WL 2781314 at *1 (C.D. Cal. 2009), the District Court found no ALJ error where plaintiff did not testify to any medication side effects, there were but brief references in her application to side effects and no medical record of any side effects. The Court expressly criticized the use of internet evidence of possible medication side effects not part of the record. In Schroeder v. Apfel, 2009 WL 3707026 at *5 (C.D. Cal. 2009), the District Court held that plaintiff bears the burden of producing medical evidence to show that claimed side effects are severe enough to interfere with the ability to work and that a single passing physician's mention of side effects was too inconsequential to meet that burden where that same physician did not include medication side effects in his employment limitations. In Montes v. Astrue, 2009 WL 3672551 at *4 (C.D. Cal. 2009), the District Court held that the ALJ was not required to make further inquiry or findings where there was no record evidence of side effects, dismissing internet references to possible side effects from medications taken. In Flores v. Astrue, 2009 WL 2984050 at *7 (C.D. Cal. 2009), the District Court found no error where the plaintiff did not testify and there was no evidence that medication side effects interfered with his ability to work. In Smith v. Astrue, 2009 WL 2973108 at *4 (C.D. Cal. 2009), the District Court found no error where plaintiff, in her

testimony at the hearing, never mentioned side effects or claimed she was unable to work due to side effects, and there was only one brief reference in the record about side effects. The court ruled that a claimant must present specific information about side effects to the ALJ as part of his or her burden to demonstrate disability:

> If Plaintiff's medications prevent her from working she has to say so. Only at that time does the type, dosage, effectiveness, and side effects become relevant, so the ALJ can evaluate Plaintiff's credibility . . . Absent an individual's statements of impairment at the outset, the ALJ has no duty to inquire of the Claimant's medications.

Id.

In each of the above District Court cases (and this case as well), the claimants were represented by the same attorney. Each case followed the same pattern. The claimants did not testify at hearing or otherwise assert to the ALJ that medication side effects impaired their ability to work. Nor did the attorney make that assertion. There were passing references to medication side effects in the record but no contention those effects interfered with the claimant's ability to work. There was little or no medical evidence of side effects. Fully aware of the claimants' medications, treating and examining physicians concluded that claimants' medical impairments did not prevent them from working. Then on appeal to the District Court, claimants' counsel cited medical sources about the possible side effects of medications that were not in the record and never presented to the ALJ. This approach unfairly deprives the ALJ of the opportunity to address medication side effects and, if permitted, would result in unnecessary, time consuming remands with no prospect of a favorable outcome for the claimants, given the meager evidence that side effects interfered with their ability to work.

The case at hand fits the same pattern as the other District Court cases. Plaintiff cites two passing references in disability reports that certain medications had side effects. (AR 101, 177.) Plaintiff, however, never made any claim in these reports that these side effects interfered with her ability to work or were the cause of her disability. There is no

other evidence in the record regarding medication side effects. Plaintiff apparently never told her many physicians or any of the other consulting examiners of any side effects or that she suffered drowsiness, leg cramps, or immobilization. No treating or examining physician reported any side effects or claimed that medication side effects affected Plaintiff's ability to work or reported any drowsiness, leg cramps, or immobilization. The treating and examining physicians who determined that Plaintiff could perform work were aware of the medications taken by Plaintiff. Their functional and work capacity assessments are inconsistent with drowsiness, leg cramps, or immobilization.

Plaintiff in her testimony at hearings in 2005 and 2007 did not mention side effects or assert that side effects rendered her unable to work. Her counsel did not raise that issue with the ALJ in 2007. Plaintiff did not raise the issue until she reached the District Court. Plaintiff presents information from a medical treatise of the possible side effects of medications that Plaintiff has taken but there is no evidence in the medical record that she ever suffered from the side effects of these other medications. The information on possible side effects is not in the record and was never presented to the ALJ.

As the other Central District cases held, the ALJ did not err here by not discussing medication side effects because Plaintiff failed to present the issue below and there were only passing references to medication side effects that were never the basis of any claim of inability to work or mentioned by any of the treating and examining medical sources. Plaintiff even concedes that medication side effects do not prevent her from working:

> Plaintiff does not contend the side effects caused by her prescription medications impairs her ability to work. Plaintiff does assert, however, that the medication side effects may impact her ability to safely and effectively perform certain jobs, thus precluding her from engaging in certain work related activities.

(JS 12.) This is a concession that medication side effects do not preclude all work and that there are some jobs that Plaintiff can perform.

11

Ironically, the ALJ did make findings that Plaintiff's medications relieved her conditions and rendered her able to engage in substantial gainful activity. Taking Geodon and Lexapro resulted in improvement in her mental impairments. (AR 396.) On Trazadone, Zyprexa and Abilify for depression and paranoia, she was found to have only moderate limitations in regard to work in 2008. (AR 398-99.) Her medications suppressed her seizures. (AR 400.)

The ALJ did not err in not addressing the impact of medication side effects on Plaintiff's ability to work. This case falls under the Osterbrock "passing reference" category of cases, not the Varney line of authority.

**D.    The ALJ Did Not Improperly Consider the Treating Psychiatrist's Opinion**

Plaintiff's last argument is that the ALJ erred in rejecting the opinion of the treating psychiatrist, Dr. Nguyen. In 2007, he diagnosed Plaintiff with bipolar disorder, depression, panic disorder with agoraphobia, and a GAF of 30. (JS 13.) He found extreme limitations that would render Plaintiff unable to do any work. (JS 15.)

The ALJ rejected Dr. Nguyen's assessment. An ALJ may disregard a treating physician's opinion, whether contradicted or not. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). However, to reject an uncontroverted medical opinion, the ALJ must present clear and convincing reasons. Magallenes v. Brown, 881 F.2d 747, 751 (9th Cir. 1989). To reject the contradicted opinion of a treating physician, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record." Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).

The medical evidence in this case is sharply conflicting. There is significant medical evidence that Plaintiff has experienced medical improvement, can perform some jobs, and is no longer disabled. Specifically, Dr. Nguyen's opinion is contradicted by Dr. Smith and State agency doctors. Thus, the ALJ's burden was to set forth specific and legitimate reasons for rejecting Dr. Nguyen's opinion.

The ALJ did so. The ALJ's primary reason for rejecting Dr. Nguyen's opinion is that his progress notes do not support the extreme limitations set forth in the work capacity

evaluation ("mental"). (AR 396.) An ALJ may reject a treating physician's opinion if it is in conflict with his own treatment notes. Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003). Dr. Nguyen's progress notes indicate only outpatient treatment with no hospitalization or intensive treatment. (AR 396.) The ALJ also cited County records in November, 2007 that indicated no positive symptoms related to her mental condition except poor sleep which was getting better. (Id.) Further, the extreme limitations in the work capacity evaluation appear to have been provided by Plaintiff herself and are not supported by Dr. Nguyen's own records. (Id.) The ALJ believed that the extreme limitations were exaggerated and of no persuasive value because the claimant would require hospitalization if the limitations were true. (AR 396-97.)

The ALJ relied heavily on Dr. Smith's consulting psychiatric evaluation, which concluded that Plaintiff was not psychotic and doubted that she ever had schizophrenia. (AR 397-98.) Dr. Smith believed that Plaintiff was exaggerating her symptoms and opined that she had no mental limitations with respect to the ability to work. (Id.) A consulting psychiatric examiner in 2008 found that she was able to focus attention and make decisions. (AR 399.) A State agency psychiatrist also opined that Plaintiff did not have a severe mental impairment. (AR 397.)

The ALJ concluded that Plaintiff clearly experienced medical improvement. (AR 399.) He based this conclusion on the following considerations: (1) Dr. Smith's report indicating no psychotic impairment; (2) the opinions of State agency review psychiatrists; (3) the consulting psychiatrist's evaluation in 2008; (4) her increased GAF scores; (5) her treatment history with San Bernardino County Department of Behavioral Health, which was routine outpatient treatment with no acute mental crisis, hospitalization, or intensive treatment; and (6) the fact Claimant's impairment no longer meets any Listing. (AR 399.) These conclusions are reinforced by significant evidence that Plaintiff is not a credible or reliable witness, and that Plaintiff exaggerated her condition and was malingering. (AR 402-04.)

13

Plaintiff does not offer any criticism of consequence or indicate that the ALJ committed any legal error. Plaintiff asserts that the ALJ did not mention Dr. Nguyen's observation that Plaintiff was disheveled, tearful, depressed and had blunted affect. (JS 14-15.) This omission was not of material significance and would not indicate severe mental impairment. Plaintiff also argues that the ALJ did not address Plaintiff's GAF of 30 (id.), but the ALJ rejected the extreme limitations in the work capacity evaluation that derive from the GAF assessment. (AR 396-97.)

Essentially, Plaintiff disagrees with the ALJ's evaluation and rejection of Dr. Nguyen's opinion. The ALJ, however, is charged with the responsibility of determining credibility and resolving conflicts in the evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ rejected Dr. Nguyen's opinion for "specific and legitimate reasons" supported by substantial evidence. Having met the legal standard, this Court has no authority to disturb the ALJ's decision.

**ORDER**

IT IS HEREBY ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: January 7, 2010          /s/ John E. McDermott
                                JOHN E. MCDERMOTT
                                UNITED STATES MAGISTRATE JUDGE